www.LourdesMaestres.com Mr. Altschul. Good morning. May it please the Court. I'm Joseph Altschul. I'm here on my own behalf. I'm also here with Mr. Robert Rosenberg, who's here on behalf of Eric Romanow. I'll start with just addressing a couple of the points that came up. There was reference to a state court case. It's not before this Court. I don't believe it's in the record. But, you know, again, you had references to a partnership as being an undisputed fact. That's not an undisputed fact. And there was no findings by the trial court on that issue. You know, virtually everything he said that he represented as fact is a disputed issue of fact. But I want to address the notice issues that the Court brought up. And first with respect to the order that Judge Kahn entered that talked about coming back at the end of the case. What happened is very early in the case, fairly early, before he had done discovery from Google and Gmail, he made an accusation that Mr. Romanow lied about changing his password on July 29th and August 27th. Mr. Romanow retained me on August 26th. So there was an allegation that he lied, and then he asserted a counterclaim that I and my client conspired to present perjured testimony backed up by fabricated Google emails that Mr. Romanow had created. Because of that, he filed this omnibus motion to strike. It was docket entry 95. And that's what that motion was about. It was about perjuring under oath about password changes and then creating fabricating emails to corroborate it. Mr. Stabenow says that at least one of the two early sanctions motions referenced a claim that your client had filed the claim for purposes of harassment. Is that not accurate? Mr. Stabenow always said that the case was about harassment. I don't dispute that he said that the case was about harassment. What I look at is what was set forth in the Rule 11 draft motions, the safe harbor, or what was set forth in that motion. When Judge Kahn denied that motion, what Judge Kahn said is, you can raise the issue at the end of the case. He didn't say, here's open carte blanche, anything you don't like, because this was a never-ending, rolling circus of accusations of fraud. And once he got the Google document. By both sides. Not by both sides, Your Honor. This case is a disaster. Your Honor, I agree this case is a disaster. You almost feel like finding a stake that are found in those vampire films, driving it as hard as you can through the middle of the torso of the corpse. I don't disagree, and I can't get out of this case. When I tried to get out of this case, he opposed me withdrawing from the case. Just last week, he subpoenaed me to come testify in a different state court case. I can't get away. And so I agree with you 100% that there is a disaster. But here's what the difference is. All of the allegations that have been made about me are fabricated allegations. The conversation with my client never occurred. We conspired to commit perjury and to create false documents. The allegations he made are in the court record of the documents that he filed. He filed the documents making this false conspiracy claim and this false allegation. He has filed the documents making each of the false statements that when the court says it's a disaster, it's absolutely a disaster. And practicing law in South Florida for nearly three decades, I have never seen anything like this and never been subjected to this. But the one thing that I will certainly say is as counsel tells you about an incentive where an attorney fee is not two ways an incentive to pursue a frivolous claim, I have never pursued a frivolous claim in nearly three decades of practice, and I didn't do it here. This claim was not frivolous. Now, this claim had multiple elements of damage to it. Now, when this client came to me, this is not somebody I knew beforehand. I mean, I know that certainly the appellant and her attorney and Mr. Romanoff all had some prior relationship. I was the stranger to that party. And when I took this, I took this to collect $260,000. And to address real estate issues that were going on between the parties. And it was only through my communication with Mr. Romanoff that it became very clear that the appellant was reading Mr. Romanoff's e-mails. And as a result of her reading his e-mails, the e-mails between us, information that she couldn't have known other than by reading his e-mails. And I understand there's disputed issues of fact about that. But as a result of that incident, that's what ultimately led to the recommendation to the client to change his password. That ultimately led to the allegation that he never did change his password and he committed perjury. Simply the recommendation that you need to do something with your e-mail because it appears that our e-mails are being monitored. And he talks about the state court proceedings. Council actually used one of the e-mails in a state court proceeding. One of the e-mails that was between Mr. Romanoff and a third party that his client wasn't copied of on that they purloined from Mr. Romanoff's e-mails. And they used that to cross-examine a witness in the state court case. So the reason this case was brought in federal court under the Stored Communications Act is because Ms. Maesters was improperly accessing Mr. Romanoff's e-mails,  Now, I'd like to point out on that issue. The district court never got to a finding on that issue, right? It didn't. The only finding the district court made was on the very narrow issue of actual damages. The district court didn't get to. And the holding was that absent actual damages, you're not entitled to statutory damages. Now, there was a statement by counsel when he was up here before that the issue was unclear by the district courts in this circuit. The issue wasn't unclear by the district courts. The district court was clear. The VISTA district court was abundantly clear. And the district court did a survey and concluded that the position that you didn't need actual damages for statutory damages was the majority opinion in the United States. This panel disagreed with that, the 11th Circuit. Of course, that disagreement came after this lawsuit had been filed. Now, curiously, in none of the motions for sanctions, none of the Rule 11 that he filed before the judgment, did he address the issue of actual damages. So when he talks about the magistrate not properly reviewing his pre-judgment Rule 11 motions, the magistrate reviewed them closely. He stated that he read them very closely. They never addressed the issue of damages. The issue has been thrown out there, certainly to cast dispersion on me, that once VISTA was reversed, that I should have stopped litigating that case. And, of course, first of all, that ignores the issue that VISTA was not only about actual damages and statutory damages, that the Act still permits declaratory relief, such as who owns the website, which was an issue in dispute, the right to continue to access. She argued that Mr. Romano had no right to stop her from accessing. That's an equitable injunctive remedy, attorneys' fees, and punitive damages if it's done willfully. All of that was still available, regardless of this Court's decision on actual and compensatory damages in VISTA. But aside from that, once that case was decided, as you're reading counsel's brief, you would think that it was clear and he brought it up and he raised the issue. But you know what? That issue was never raised. I didn't know about the reversal of VISTA until after I'd withdrawn from the case and summary judgment had been granted. He didn't raise it in his motion for summary judgment. He didn't raise it in any of his Rule 11s. He didn't cite VISTA. He didn't cite the Fourth Circuit case in Van Alstyne. He didn't even talk about the principle of what was at issue in those cases. And then in his reply brief in response to the answer in summary judgment, when successor counsel, also unaware that that case had been reversed, simply made the argument we're entitled to compensatory, even absent actual damages, then on reply he came back and cited the Eleventh Circuit case. And as a result, Judge Kahn addressed that issue and granted summary judgment. There was never the issue raised. What about additional compensatory damages, which are in the record, things like web hosting and the actions that Mr. Romano had to take to try to stop what was going on? That was never addressed or raised by successor counsel. Now, I do have a couple cases of supplemental authority that I would like to provide to the court and provide to counsel. Should I do that after? If you're going to do that, you need to do it with a 28-J letter so that Mr. Stabenow has the opportunity to respond. Sure, I'll be happy. If you want to give him the actual cases today, just as a matter of courtesy, that's great. Okay. But file it with a 28-J letter within seven days, and Mr. Stabenow, you have the ability to respond as well within 14 days. Okay? No, what I— Today. So you file by next Friday? Yes, Your Honor. And then, well, that's going to take us into the holidays. Do you want to file before or after the holidays? Both of you. I'm okay either way, whatever the court— Are you ready to go today? I am, Judge. When are you ready to file the 28-J letter? I'd say a week from today. Okay. So that's the 21st. Okay. That's a reasonable request. So how about—well, you tell me the day you want, Mr. Stabenow. January 7th. Well, I guess I can—how about January 12th, which I think is a Friday? Okay. How about the 11th? Okay? Your Honor, I'd like to briefly address two statements in Appellant's brief that I think are dispositive on the facility issue, which is the facility and damages are the two Rule 11 issues. So on the facility issue, first of all, in the initial brief, first in the reply brief on page 01, counsel states that the question in this case about accessing a facility, the way the appellant accessed the e-mails is a novel question of law. And that was, of course, made in support of the argument to try and have oral argument before this court. But this court has decided in precedent in the cases that I'll be submitting, the Baker case versus Alderman, which was also cited in the magistrate's opinion, that Rule 11 is not something that should be used for novel issues and novel cases. And so on that basis alone, that should be dispositive on that issue. Now, also... Let me just say, if the cases that you're sending us were cited by the district court or by the magistrate judge, you don't have to give them to us. Okay. And that case was, and it was also addressed in the, I believe, in the initial brief as well, in the appellant's initial brief, although I didn't cite it in my answer brief. So it's a novel question of law. Now, the second issue is the issue of connection and accessing a facility. And appellant says on page 11 of their brief, they admit that their phone was connected to Romano's e-mail account, which was on the Gmail facility. So that admission alone, that her phone was connected to that account, connected to that facility, certainly should bring an end to any issue on whether there was an improper access of a facility, whether there was an access of a facility. Of course, whether there was authorization was another disputed issue, but the Rule 11 issue that we're here on is whether there was access to a facility. And I think in their brief they have admitted access by virtue of that statement, just as they've admitted that it's a novel issue of law. Do we have time for Mr. Rosenberg to address the perjury issue, or did I use it all? You gave him his time, right? Yes. Okay, so this is just my time. Okay. Thank you, Your Honor. As I won't get to speak again, I would stand on our brief. I would ask the court to affirm the district court, and I also would ask the court to grant our Rule 38 motion that's pending. Thank you. All right. Thank you very much. Mr. Rosenberg. Your Honor, I was taking notes, and I had intended to stand. Please speak into that microphone. I'm sorry. I had intended to stand on my brief. I think it's complete. But I do want to touch base on perjury because perjury, of course, is defined by statute, and it seems to me that perjury must be evidenced by willful intent to provide false testimony. There's been no finding by the court here on that issue. There's been no finding by the court on any perjury issue. All we have is claims in documents, but we don't have any established perjury. Along with perjury is an almost companion issue in this case, that there's a fraud on the court, an extremely high standard for fraud on the court. There's no record here. There's no finding of any fraud on the court. I submit to the court there's no basis for finding a fraud on the court, and perjury alone is not fraud on the court. That's what I had to say on the perjury issue, and I'm going to stand on my brief. I think I explained it probably better there. All right, Mr. Rosenberg. Thank you very much. Thank you. Your Honor, I would just like to address the notice issue again because that's an important issue that you've brought up. As Mr. Altschul stated, at every stage I raise the issue of improper purpose as a harassment. It's in the first paragraph, I believe, of both Rule 11 motions, and I also believe that that is part of the Rule 11, and even though they keep saying that the Rule 11 only involves the damages and the access, I believe that because I raised that in the Rule 11 motion, that it was a Rule 11 issue and not just based on an inherent power of the court's issue, which is a separate issue on a bad faith, even though I also believe that using a lawsuit for an improper purpose is bad faith. Again, if you go to DOC entry 301, which is the magistrate's report, and you look at page 13, the magistrate acknowledges that I raised that issue and that I preserved it, that it was raised for an improper purpose. With respect to Mr. Altschul bringing up that I subpoenaed him another case, I subpoenaed him another case, Your Honor, because his client brought another case against my client and they list him as a witness. So he leaves those facts out. That's why he got subpoenaed. Same thing, he got subpoenaed in this case because he lists himself as a witness. I have to do what I do. The difficulty with this case, among others, Mr. Stabenow, from my personal perspective, is that both sides are saying all sorts of things about the other, but there are no findings from the district court as to a fair number of those things. And so when they say you did X and you say they did Y, they're just allegations because the district court didn't have to resolve them. Your Honor, a lot of it is actually his admissions and his declaration. Is it good faith, Your Honor, is it good faith for a plaintiff to say, yeah, I had a strategy to attack – we had a strategy to attack the counsel, and Ms. Meister said I said that orally, but in fact I put it in an email. But they never produced that email. Where's that email? I'd love to see that email that you sent an email. They sent an email saying they're going to attack the counsel over here, and you say this has been a very heated – yeah, because I've been attacked and obviously I've filed Rule 11s, but I don't go out attacking someone personally. I'm attacking what they're doing in here. I'm not going back to whether they should have been admitted to law school or not, which is what they've done to me. I'm just talking about what they've done in this case. And he admitted in a declaration that he sent an email, and you have yet to see that email. It was never logged as privileged, and we have yet to see it. That I don't believe is good faith. And so he's had five attorneys in this lawsuit, five attorneys in this lawsuit. So he brought the team of the worst imaginable team of attorneys. You just see prompts he was going to do. I would just bring up the email that he's talking about. My client printed that before they ever even had a falling out because she knew they were going to have a falling out. And the phone access issue, there is a decision right now. This decision in this case basically says, Your Honor, that if Google – if you have a token on your phone that Google sets up where they're going to automatically send emails to your phone, you can violate the SCA just by having that on your phone. That is not you accessing Google. That's what was going on here. My client created the account, so the token was put on my client's phone when she created the account. And the emails continued to come to that account. Even though he was changing ordinary passwords, Google said on their website, Ordinary passwords will not revoke that token. And it wasn't until October 29th that Ravanaugh figured that out, and he goes, Oh, I've got to remove that. And that's when her phone first said, You need a new password. How is someone going to violate the SCA when they've never even taken any action? All they did was the stuff just kept coming on their phone. And I think that this court should address that issue because people are going to be using this opinion to go after people just because – even though they haven't even done anything – just because they have emails going on their phone because, again, this SCA was created, the Stored Communications Act was created, because they didn't want people to go breaking into warehouses, so you can't go hacking into Google. But it's different when you already set it up so that – sorry. I understand where you're coming from, but the merits of this case is not before us, at least not directly. Well, Your Honor – You're asking us to go out and decide an unsettled issue of law in the circuit when the merits of this case have been long closed. We're just dealing with a fee issue now, a sanctions issue. Yeah, but that was one of the issues, which is whether or not she was accessing – and it's in the report. It's in the district court's decision. It's going to be relied on. And at this point, Your Honor – But the district court didn't say definitively anything on that issue, right? It just said that there are cases holding that that is sufficient access. I think the district court got that wrong because the district court – what those cases are saying is that you can use a phone to access Gmail and to hack into Gmail, and you can use a computer to do so too. I know, Mr. Stabenow, but you might be on stronger footing in asking us to address that pure issue of law if the district court had said Mr. Romano is right and you can impose liability based on that sort of access. But the district court didn't say that. What the district court said is that there's some law that supports that proposition, and as a result, the allegation was legally and factually supportable. It didn't take a stand one way or another on that. Yeah, it's true, Your Honor. Okay, he did cite those cases. The only thing is I cited the cases that say that basically there's a footnote in the Kasui case which says here's a bunch of cases that say you can't – accessing your own phone is not accessing a facility. That's what the case law was routinely held, and I cited that in my brief. The fact is right now, Your Honor, they're using Rule 11 motions as a defensive tactic, and if the court doesn't reverse, we're going to go back down and they're seeking sanctions against me and my client saying that this is frivolous, that this appeal was frivolous. They're seeking Rule 38 against me, seeking this appeal as frivolous. Your Honor, you have a plaintiff who's basically – he admitted he was going to do this as a personal vendetta. Whether you say it's proper or not, I don't think it is, but the changes in the allegations and all the facts in their totality, in their totality I believe at least warrant sanctions against the plaintiff himself. To change – for him to say, yeah, I have a – We think we understand your position and we've taken you over your time, Mr. Stabenow. Thank you so much for the extra time, Your Honor. Thank you. Thank you both or all three of you.